UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EDWARD J. KELLY,

          Plaintiff,               CIVIL ACTION NO. 07-11824

      v.                    DISTRICT JUDGE DENISE PAGE HOOD

COMMISSIONER OF             MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

          Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for

summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH**

**PREJUDICE**.

### II.  Background

In August 4, 2005, plaintiff filed an application for Social Security Disability Insurance

Benefits (DIB), alleging that he was disabled due to the severe effects of a left shoulder injury

and two related surgeries, with a disability onset date of January 2, 2004.  (Tr. 45, 54)  Plaintiff

graduated high school, and has a work history including employment as a resident unit

supervisor at a correctional facility.  (Tr. 56, 81)

The Social Security Administration (SSA) denied plaintiff's claim on August 10, 2005. (Tr. 33-37)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 38) A hearing was held on July 24, 2006, before ALJ Thomas J. O'Dowd.  Plaintiff and a Vocational Expert ("VE") testified at the hearing.  Plaintiff was not represented by counsel.  (Tr. 77-95)

On October 31, 2006, the ALJ issued a written decision denying plaintiff's claim.  (Tr. 21-25)  The ALJ first determined that plaintiff had an impairment because of his left shoulder injury.  (Tr. 22,  24)  The ALJ also determined that plaintiff's impairment was "severe" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 22, 24)  The ALJ further determined that, while plaintiff could not perform his past relevant work,  plaintiff retained the residual functional capacity (RFC) to perform the requirements of various other semiskilled light security jobs and that such jobs exist in significant numbers in the applicable local economy, as testified to by the VE.  (Tr. 23, 24) Considering plaintiff's vocational factors and RFC, as well as the VE's testimony, the ALJ concluded that, within the framework of Rule 202.15 of Table No. 2 of Appendix 2 to Subpart P of Regulation No. 4, plaintiff must be found "not disabled."  (Tr. 23, 24)  Accordingly, ALJ Anderson found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 236)  Plaintiff was fifty-three years old at the time of the ALJ's decision.  (Tr. 22)

On November 20, 2006, plaintiff  filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 13)  The Council denied the request on April 4, 2007.  (Tr. 4-7) The ALJ's decision thus became the final determination of the Commissioner.

On April 26, 2007, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends in his motion that the ALJ formed an inaccurate hypothetical question after incorrectly assessing plaintiff's credibility. Plaintiff also argued that the ALJ erred by failing to comply with the mandates of SSR 00-4p. The Commissioner contends that ALJ's decision is supported by substantial evidence and should thus be affirmed.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In <u>Foster</u>, 279

F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity. Next the claimant must demonstrate that she has a
> "severe impairment." A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment." If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

## B. Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's

findings are supported by substantial evidence and whether the ALJ applied the proper legal

standards. <u>Brainard v. Secretary of HHS</u>, 889 F.2d 679, 681 (6th Cir. 1989); <u>Key v. Callahan</u>,

109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in <u>Brainard</u>, 889 F.3d at 681, that

"[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance

and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is

substantial evidence in the record that would have supported an opposite conclusion, so long as

substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

### A. Accuracy of Hypothetical/Credibility Determination

At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of

an individual of plaintiff's age, education, work experience, and RFC to engage in substantial

gainful activity. Specifically, the ALJ asked the VE to assume a person:

> currently 53 years old, the educational background and work back
> ground, which will (INAUDIBLE). So he suffered a - - he's had
> some problems with - - a long time (INAUDIBLE). The current
> problem that we're, that we're confronted with or involved with,
> involved an, an accident at work, which related to his non-
> dominant left shoulder and upper extremity. He's had two
> surgeries followed by physical therapy and still is left with
> limitations and discomforts in that left upper extremity. He
> doesn't have full use. In the first hypothetical situation, I'd like
> you to consider this, that with regard to the right upper extremity,
> there are no limitations. With regard to the left upper extremity,
> although Dr. Spiro says - - Dr. Spiro puts in here 15-pound
> limitation. Let's assume that he could do a - - lift a 15-pound item,
> but could not - - with his left upper extremity, could not, could not
> raise it above the - - instead of over the shoulder, let's say - - or
> over the head (INAUDIBLE). The right upper extremity, there is
> no such limitation. [Tr. 90-91.]

In response to the hypothetical, the VE testified that, while such a person could not work as a

resident unit officer, he could perform the light, semiskilled work of a security guard and that

there were approximately 20,000 of those jobs. (Tr. 91) On the basis of that testimony, the ALJ

concluded that plaintiff was not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates a claimant's physical and mental limitations, and the VE testifies that a person with such limitations is capable of performing a significant number of jobs in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled. Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's testimony cannot support such a finding. The ALJ is not required to specifically refer to a claimant's medical conditions in the hypothetical. Webb v. Commissioner of Social Security, 368 F.3d 629 (6th Cir. 2004). Further, the ALJ is not required to include in a hypothetical unsubstantiated allegations and complaints. The hypothetical "need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence." Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002). In this case, plaintiff argues that the hypothetical was inaccurate because it failed to incorporate all of his limitations. Plaintiff's argument that the hypothetical was inaccurate is entirely dependent on his arguments that ALJ erred in assessing his credibility.

At the hearing in this case, plaintiff testified that he injured his left shoulder in January 2004 and has had two surgeries on it since then. (Tr. 82-83) According to plaintiff, the first surgery actually made his shoulder feel worse and the second one only helped for a brief time. (Tr. 83) Plaintiff also testified that he attended physical therapy following his second surgery, but that the physical therapy did not help and a Dr. Sperl told him to stop going. (Tr. 84) Plaintiff further testified that, while Dr. Sperl only restricted him from overhead reaching and lifting more than fifteen pounds with his left arm, plaintiff cannot lift more than five pounds.

(Tr. 84-85) Plaintiff claimed that he was taking "Norcal and Diazpem" daily for the pain. (Tr. 85-86) However, plaintiff also stated that he has been on that medication since 1992 because of an earlier injury. (Tr. 86) Plaintiff testified that he has trouble doing any housekeeping and that his daughter moved in to help out. (Tr. 87) Plaintiff helps take care of his disabled brother and he plans on cooking and cleaning after his daughter moves out. (Tr. 87) Plaintiff can drive, but he cannot ride a bike. (Tr. 87-88) Nor can plaintiff hunt or fish anymore. (Tr. 88)

The ALJ determined that plaintiff's claims regarding his limitations were not totally credible. (Tr. 21-22) Specifically, the ALJ noted "the lack of any recent treatment of the [plaintiff], or any need for prescription pain medication; his specific functional restrictions, as reported by his treating physician; and his actual activity level." (Tr. 22)

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997). However, credibility assessments are not insulated from judicial review. Despite the deference due, such a determination must nevertheless be supported by substantial evidence. Walters, 127 F.3d at 531. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]" 20 C.F.R. § 404.1529(a); see also Walters, 127 F.3d at 531. Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence...would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

As noted by the ALJ, there is no evidence that plaintiff is currently receiving medical treatment for his injury. (Tr. 22) While the plaintiff testified at the hearing that he is receiving continued treatment from medical doctors and he indicated such in the "Recent Medical Treatment" form he filled out in connection with the hearing (Tr. 54, 92-93), there is simply no evidence of recent treatment in the record beyond plaintiff's statement. At the hearing, the ALJ noted that the lack of such evidence and indicated to plaintiff that he was willing to delay his decision while plaintiff gathered new evidence if plaintiff wished. Plaintiff refused that offer to gather more evidence. (Tr. 92-93) Given the absence of any evidence supporting plaintiff claims that he is still receiving treatment beyond his own statements, the ALJ properly used the lack of recent treatment as a factor in rejecting plaintiff's claims.

The medical evidence in the record also provides support for the ALJ's credibility determination. While both sides agree that the ALJ was incorrect to identify Dr. Sperl as a treating physician, the ALJ correctly noted that Dr. Sperl only restricted plaintiff from overhead reaching and lifting more than fifteen pounds with his left arm, and that Dr. Sperl advised that plaintiff continue his home range of motion exercise in conjunction with anti-inflammatory over-the-counter Motrin. (Tr. 22, 62) Moreover, at the Physical RFC Assessment, a state physician found the same restrictions as Dr. Sperl. (Tr. 69) Plaintiff fails to point to any medical evidence or source that conflicts with those opinions of those examining physicians and the medical opinions therefore support the ALJ's findings.

Plaintiff did testify at the hearing that he takes prescription pain medication in the form of Norcal and Diazepam (Tr. 85-86), and he also wrote he was on Norcal in a medication list filled out in July 2006 (Tr. 55). However, plaintiff admitted to taking that medication years

before he injured his left shoulder (Tr. 86), there is no evidence beyond his own statements that plaintiff needed prescription medication and, as observed by the ALJ, Dr. Sperl merely advised plaintiff to use over-the-counter medication to control any discomfort. (Tr. 22, 76) Given Dr. Sperl's finding, and the absence of any evidence suggesting that plaintiff's pain required prescription medication, the evidence in the record regarding prescription pain medication also provides support for the ALJ's findings.

Finally, plaintiff's daily activities provide support for the ALJ's findings. As discussed above, plaintiff testified that his activities had become much more reduced since his injury; he no longer goes fishing or hunting, and his daughter helps him with cooking and cleaning. However, he also said that he can engage in light activities; he is still able to drive; and he helps take care of his disabled brother. Moreover, plaintiff indicated that he intends to cook and clean once his daughter moves out. (Tr. 84-88) While plaintiff's activities display that he was injured, they also suggest that plaintiff is capable of more than he claims and, consequently, plaintiff's daily activities provide support for the ALJ's decision.

According great weight and deference to the ALJ's superior position to observe plaintiff's testimony, substantial evidence exists to support the ALJ's credibility determination. Plaintiff's testimony is not corroborated by any medical opinions, the history of his treatment, or his daily activities. A plaintiff's statements regarding his pain or other symptoms are insufficient by themselves to establish that the plaintiff is disabled, and in this case that is essentially all that plaintiff offers.

**B.  Compliance with SSR 00-4p**

Plaintiff also argues that his case must be remanded because the ALJ failed to comply

with the requirements of SSR 00-4p by asking the VE if there was any conflict between the VE's

testimony and the *Dictionary of Occupational Titles* ("DOT").  In the relevant part, SSR 00-4p

provides:

> Occupational evidence provided by a VE or VS generally should
> be consistent with the occupational information supplied by the
> DOT. When there is an apparent unresolved conflict between VE
> or VS evidence and the DOT, the adjudicator must elicit a
> reasonable explanation for the conflict before relying on the VE or
> VS evidence to support a determination or decision about whether
> the claimant is disabled. At the hearings level, as part of the
> adjudicator's duty to fully develop the record, the adjudicator will
> inquire, on the record, as to whether or not there is such
> consistency.
>
> Neither the DOT nor the VE or VS evidence automatically
> "trumps" when there is a conflict. The adjudicator must resolve the
> conflict by determining if the explanation given by the VE or VS is
> reasonable and provides a basis for relying on the VE or VS
> testimony rather than on the DOT information.

In this case, the ALJ clearly failed to in his duty to fully develop the record in this case

by inquiring, on the record, as to whether the VE's testimony was consistent with the DOT.  (Tr.

89-92)  However, that error could be harmless and, therefore, not require a remand if the court

can determine that there was no actual conflict between the VE's testimony and the DOT.  See,

e.g., Renfrow v. Astrue, 496 F.3d 918, 921 (7th Cir. 2007) ("In sum, the ALJ's error in failing to

ask the vocational expert about possible conflicts between his testimony and the Dictionary of

Occupational Titles was harmless, since no such conflict appears to exist."); Massachi v. Astrue,

486 F.3d 1149, 1154 n. 9 (9th Cir. 2007) (failure to follow SSR 00-4p would have been harmless

if there had been no conflict between opinion and Dictionary); Prochaska v. Barnhart, 454 F.3d

731, 736 (7th Cir. 2006) (remand necessary where the Court, on the basis of the record before it,

could not determine whether the expert's testimony was actually inconsistent with DOT);

Teverbaugh v. Comm'r of Soc. Sec., 258 F.Supp.2d 702, 706 (E.D. Mich. 2003) (remand

necessary where the VE's testimony was the only step five evidence that the ALJ relied upon,

the ALJ failed to ensure there was no conflict, and there was no other means of determining

whether plaintiff could perform identified jobs).

In this case, while the ALJ erred by failing to ask the vocational expert about possible

conflicts between his testimony and the DOT, the error was harmless because no such conflict

appears to exist.  The VE testified that, with the limitations outlined by the ALJ, a person could

work as a "security guard" and that the work was "light, semiskilled work."  (Tr. 91)  The VE

did not provide job codes for any security guard positions, but, as argued by the Commissioner,

the DOT identifies a number of security guard positions involving light-level exertion plaintiff

could clearly do given his RFC and skills, as found by the ALJ.  See DOT § 372.167-010

DISPATCHER, SECURITY GUARD[1];  § 372.667-034 GUARD, SECURITY[2]; § 372.667-

---

[1]372.167-010 DISPATCHER, SECURITY GUARD (business ser.): "Dispatches security
personnel to client's site for private, protective-service firm: Reads posted orders to ascertain
personnel requirements and notifies guards of work assignments and changes in instructions by
telephone.  Posts assignment information on dispatch board.  Compiles and records data for
dispatch, payroll, billings, and personnel records.  May issue regular and special equipment to
guards.  May interview applicants and recommend hiring or hire guards.  GOE: 04.02.02
STRENGTH: L GED: R4 M3 L3 SVP: 6 DLU: 77"

[2]372.667-034 GUARD, SECURITY (any industry) alternate titles: patrol guard; special
police officer; watchguard: "Guards industrial or commercial property against fire, theft,
vandalism, and illegal entry, performing any combination of following duties: Patrols,
periodically, buildings and grounds of industrial plant or commercial establishment, docks,

038 MERCHANT PATROLLER[3]. Moreover, plaintiff fails to even suggest in his brief that

there is an actual conflict or any potential for conflict. Instead, plaintiff merely rests on the fact

that the ALJ failed to follow SSR 00-4p and, while it is true that the ALJ may have erred, any

error was harmless because the court can determine that there was no actual conflict between the

---

logging camp area, or work site. Examines doors, windows, and gates to determine that they are
secure. Warns violators of rule infractions, such as loitering, smoking, or carrying forbidden
articles, and apprehends or expels miscreants. Inspects equipment and machinery to ascertain if
tampering has occurred. Watches for and reports irregularities, such as fire hazards, leaking
water pipes, and security doors left unlocked. Observes departing personnel to guard against
theft of company property. Sounds alarm or calls police or fire department by telephone in case
of fire or presence of unauthorized persons. Permits authorized persons to enter property. May
register at watch stations to record time of inspection trips. May record data, such as property
damage, unusual occurrences, and malfunctioning of machinery or equipment, for use of
supervisory staff. May perform janitorial duties and set thermostatic controls to maintain
specified temperature in buildings or cold storage rooms. May tend furnace or boiler. May be
deputized to arrest trespassers. May regulate vehicle and pedestrian traffic at plant entrance to
maintain orderly flow. May patrol site with guard dog on leash. May watch for fires and be
designated Fire Patroller (logging). May be designated according to shift worked as Day Guard
(any industry); area guarded as Dock Guard (any industry); Warehouse Guard (any industry); or
property guarded as Powder Guard (construction). May be designated according to
establishment guarded as Grounds Guard, Arboretum (any industry); Guard, Museum
(museums); Watchguard, Racetrack (amuse. & rec.); or duty station as Coin-Vault Guard (any
industry). May be designated Guard, Convoy (any industry) when accompanying or leading
truck convoy carrying valuable shipments. May be designated: Armed Guard (r.r. trans.); Camp
Guard (any industry); Deck Guard (fishing & hunt.; water trans.); Night Guard (any industry);
Park Guard (amuse. & rec.). GOE: 04.02.02 STRENGTH: L GED: R3 M1 L2 SVP: 3 DLU: 88"

[3]372.667-038 MERCHANT PATROLLER (business ser.) alternate titles: doorshaker;
guard; security guard: "Patrols assigned territory to protect persons or property: Tours buildings
and property of clients, examining doors, windows, and gates to assure they are secured.
Inspects premises for such irregularities as signs of intrusion and interruption of utility service.
Inspects burglar alarm and fire extinguisher sprinkler systems to ascertain they are set to operate.
Stands guard during counting of daily cash receipts. Answers alarms and investigates
disturbances [ALARM INVESTIGATOR (business ser.)]. Apprehends unauthorized persons.
Writes reports of irregularities. May call headquarters at regular intervals, using telephone or
portable radio transmitter. May be armed with pistol and be uniformed. May check workers'
packages and vehicles entering and leaving premises. GOE: 04.02.02 STRENGTH: L GED: R2
M1 L2 SVP: 3 DLU: 77"

VE's testimony and the *Dictionary of Occupational Titles* given the number of security guard jobs involving light-level exertion.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address

each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: February 15, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's
ECF System and/or U. S. Mail on February 15, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan